**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MICHAEL MCFERRON | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:20-cv-474 |
| v. | ) | |
| | ) | |
| EISENBATH LAWN CARE LLC | ) | |
| | ) | |
| Serve at: | ) | |
| Registered Agent Gary Eisenbath | ) | |
| 14 Wilton Ct. | ) | |
| St. Charles, MO 63301 | ) | |
| | ) | |
| and | ) | |
| | ) | |
| GARY EISENBATH | ) | |
| | ) | |
| Serve at: | ) | |
| 14 Wilton Ct. | ) | |
| St. Charles, MO 63301 | ) | |
| | ) | |
| Defendants. | ) | **JURY TRIAL DEMANDED** |

**PETITION**

COMES NOW Plaintiff Michael McFerron ("Plaintiff"), by and through his undersigned

counsel, and for his Petition states as follows:

**INTRODUCTION**

1.     This is an action for unpaid minimum wage compensation, overtime

compensation, and attorney's fees and costs for violations of the Fair Labor Standards Act, 29

U.S.C. §§ 201, et. seq. ("FLSA").

1

2.      This is also an action for nonpayment of wages in contravention of Missouri's Minimum Wage Law, Mo. Rev. Stat. § 290.505 et seq. ("MMWL"), for breach of contract, for false imprisonment, and for abuse of process.

3.      Plaintiff demands a trial by jury on all issues so triable.

### JURISDICTION AND VENUE

4.      This Court has jurisdiction of all claims because Plaintiff's primary cause of action is for nonpayment of wages pursuant to 29 U.S.C. § 206 et seq.  Accordingly, this Court has federal question jurisdiction of this FLSA matter pursuant to 28 U.S.C. § 1331 because this is a "civil action arising under the.. Laws… of the United States."

5.      This Court has supplemental jurisdiction with respect to Plaintiff's other claims for violation of Missouri's minimum wage laws, for breach of contract, for false imprisonment, and for abuse of process, because these claims arise out of the same transaction and occurrence that give rise to Plaintiff's FLSA claims, namely Defendants' failure to pay Plaintiff his wages. As such, this Court may properly exercise supplemental jurisdiction over these related claims pursuant to 28 U.S.C. § 1367.

6.      All relevant actions of Plaintiff and Defendants occurred within the Eastern District of Missouri in the Eastern Division because Plaintiff and Defendants were residents of St. Charles County, Missouri and much of the work that Plaintiff provided for Defendants occured in St. Charles County, St. Louis County, and the city of St. Louis, Missouri.  Plaintiff suffered the harms described herein in this District.  Venue is therefore proper in this District.

2

## PARTIES

7.      Plaintiff is a natural person currently residing in St. Charles, Missouri.

8.      Plaintiff worked as a lawn care maintenance worker for Defendants from June of 2006 through the end of 2014. From approximately January of 2018 through November of 2019, Plaintiff worked for Defendants as a lawn care maintenance worker.

9.      At all times relevant, Plaintiff's job duties entailed cutting grass, trimming, leaf-blowing, maintenance on Defendants' lawn care equipment, general yard work, and any other menial tasks as assigned by Defendants.

10.     Plaintiff was not part of a union and was at all times an hourly worker employed subject to the provisions of the FLSA.

11.     Upon information and belief, Defendant Gary Eisenbath ("Eisenbath") is a natural person who resides or can be found in St. Charles County, Missouri.  Eisenbath controls and operates Eisenbath Lawn Care LLC ("ELC").

12.     Eisenbath owns, operates, and controls Defendant ELC.

13.     ELC is a Missouri limited corporation and is a for profit, full service lawn care provider based out of St. Charles, Missouri.

14.     Eisenbath employed Plaintiff from January 2018 through March 2020; ELC has acted, at all times relevant, in the interest of and at the direction of Eisenbath.

15.     In the alternative, ELC employed Plaintiff from January 2018 through March 2020; Eisenbath has acted, at all times relevant, in the interest of and at the direction of ELC.

16.     Defendants jointly directed the operations of Defendants' place of business.

3

17.     Defendants had day-to-day control over where Plaintiff worked, the hours Plaintiff worked, and the type of work Plaintiff would be doing.

18.     Defendants jointly controlled all aspects of Plaintiff's work while Plaintiff worked for Defendants.

19.     Eisenbath and ELC jointly had the power to hire or fire Plaintiff.

20.     Defendants jointly set Plaintiff's work schedule and rate of pay.

21.     Defendants were jointly responsible for paying Plaintiff every two weeks.

22.     Defendants made and implemented decisions about Plaintiff's hourly wage and the method of Plaintiff's bi-weekly payment.

23.     Defendants jointly reviewed and controlled Plaintiff's employment records, including all records pertaining to Plaintiff's rate of pay, compensation, and hours worked.

24.     Defendants' equipment was used for Plaintiff's work.

25.     At all times relevant, Eisenbath and ELC were both Plaintiff's employers within the meaning of Section 290.500(4).

26.     At all times relevant, Plaintiff was Defendants' employee within the meaning of Section 290.500(3).

## FACTS

27.     At all times relevant, Defendants had an agreement with Plaintiff whereby Plaintiff would work as a full-time lawn care maintenance worker for Defendants.

28.     At all times relevant, Plaintiff's work was as a lawn care maintenance worker.

29.     Defendants and Plaintiff agreed that Plaintiff would have to work many overtime hours as the need arose.

30.     In exchange for Plaintiff's labor, Defendants agreed to compensate Plaintiff at a set hourly rate per hour for up to a maximum of 40 hours each seven-day period and a rate of 1.5 times that amount per hour for hours worked in excess of 40 hours per week.

31.     In 2018, Plaintiff's set hourly rate was $14.00 per hour for standard hours.

32.     At that time, the rate for overtime hours was $21.00 for each overtime hours.

33.     Defendants and Plaintiff agreed that Plaintiff would be paid every fourteen days.

34.     Plaintiff would never have agreed to any of the foregoing items without Defendants' promise to pay $14.00 per hour for standard hours and $21.00 per hour for overtime hours worked for Defendants.

35.     Upon information and belief, Plaintiff typically worked numerous overtime hours, especially during the spring and summer months when there was more work. Plaintiff frequently worked over 70 hours in a weekly period.

36.     Based upon Plaintiff's best recollection, he worked overtime hours in many of the two-week periods in which he was employed by Defendants.

37.     Defendants knew that Plaintiff regularly worked more than 40 hours per week.

38.     Defendants orchestrated a variety of schemes to improperly withhold wages from many of the paychecks they provided Plaintiff.

5

39.     For instance, at the end of each workday Plaintiff would be required to go back to the shop and spend between one and two hours maintaining Defendants' equipment. Defendants would not pay for these hours worked at the shop each day.

40.     Defendants also refused to pay for travel time from the shop each morning to the job, and then from the last job back to the shop that night, despite Plaintiff being required to go into the shop before and after the first and last job of the day.

41.     Defendants did not pay Plaintiff for all of the hours he worked, including many of his overtime hours.

42.     If Defendants did pay for hours beyond 40 in a one week period, they would typically pay Plaintiff's regular wage of $14.00 an hour in cash and not pay Plaintiff 1.5 times his hourly rate, or $21.00.

43.     Plaintiff thereafter received two raises in Plaintiff's hourly rate increased to $15.00 per hour for all regular hours worked and $22.50 per hour for all overtime hours worked, and later to $16.00 per hour for all for all regular hours worked and $24.00 per hour for all overtime hours worked.

44.     Defendants employed Plaintiff until November of 2019 when Plaintiff was constructively discharged due to Defendants' failure to pay him for many hours of wages totalling thousands of dollars.

45.     Defendants' withholding of pay from Plaintiff was wrongful and intentional.

46.     Upon information and belief, Defendants' practices in wrongfully withholding payment from Plaintiff have been consistent since the beginning of 2018.

6

47.     Upon information and belief, Defendants have wrongfully withheld thousands of dollars from Plaintiff's paychecks since the beginning of 2018.

### *Defendants Falsely Imprison Plaintiff*

48.     Plaintiff and Defendants had a tenuous relationship due to Plaintiff's complaints about Defendants' wage and hour practices and Plaintiff's time off from work.

49.     Defendants treated Plaintiff with disrespect, contempt, and set out to cause him stress and injury by having him falsely imprisoned.

50.     In 2019, Defendants allowed Plaintiff to use a company credit card to purchase a cell phone and Plaintiff used the company credit card for this purpose.

51.     Then, in the beginning of February of 2020, Defendants reported Plaintiff to their local police department for credit card fraud and Defendants caused Plaintiff to be detained by the police, despite Plaintiff being explicitly authorized by Defendants to use this credit card.

52.     Plaintiff was able to demonstrate that he had authorization to use the company credit card but still spent a night in jail dealing with this false arrest by police.

53.     Defendants' detention of Plaintiff was unlawful.  Defendants knew that Plaintiff had authorization to use the company credit card and caused Plaintiff to be arrested in an effort to harass him.

54.     Defendants need only to have encouraged, caused, promoted, or instigated the arrest of Plaintiff to be found liable for false imprisonment. *See* Highfill v. Hale, 186 S.W.3d 277, 280 (Mo. banc 2006); Rustici v. Weidemeyer, 673 S.W.2d 762, 767 (Mo. banc 1984).

7

55.     Defendants engaged in this false imprisonment as part of the ongoing conflict between Plaintiff and Defendants during his employment with Defendants.

56.     Defendants knew that they could not have Plaintiff arrested for credit card fraud yet did so anyway to cause Plaintiff harm.  Plaintiff was damaged from Defendants' false arrest.

## COUNT I - VIOLATION OF THE FLSA

57.     Plaintiff incorporates by reference all prior paragraphs as if fully stated herein.

58.     Defendants knowingly and willfully disregarded the provisions of the FLSA as evidenced by its failure to compensate Plaintiff at least the statutory minimum wage for many regular hours worked, when it knew or should have known such was due and that non-payment would financially injure Plaintiff.

59.     Additionally, Defendants failed to compensate Plaintiff at a rate of one and a half times his base rate of pay for hours worked in excess of forty during any given one week pay period.

60.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiff is entitled to liquidated damages pursuant to the FLSA.

61.     Plaintiff is entitled to an award of his reasonable attorney's fees, costs, and expenses, pursuant to 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and award him unpaid minimum wages and overtime wages due under the FLSA, liquidated and/or punitive damages as a result of Defendants' knowing and willful failure to pay minimum and overtime wages pursuant to FLSA, prejudgment and post-judgment interest, expenses

8

associated with this action, together with reasonable attorney's fees, and such other and further relief as this Court determines to be just and proper.

## COUNT II - VIOLATIONS OF THE MMWL

62.     Plaintiff incorporates all prior paragraphs as if fully stated herein.

63.     In violation of Missouri Statute 290.502(1), Defendants refused to pay Plaintiff whatsoever for many of his hours worked.

64.     Defendants are liable to Plaintiff for the full amount of the regular time wages that it failed to pay him, in addition to an equal amount as liquidated damages.

65.     Defendants are liable to Plaintiff for the full amount of the overtime wages that it failed to pay him, in addition to an equal amount as liquidated damages.

66.     Defendants are liable to pay Plaintiffs's attorneys' fees and costs.

67.     Defendants' actions set forth above damaged Plaintiff such that Plaintiff has suffered a substantial loss of money and has had to expend significant court costs and attorneys' fees as a result of Defendants' actions set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and award him actual damages, compensatory damages, nominal damages, punitive damages, double the amount of unpaid regular time, double the amount of overtime, and remit court costs, attorneys' fees, and all other and further relief that the Court deems just and proper.

## COUNT III - BREACH OF CONTRACT

68.     Plaintiff incorporates all prior paragraphs as if fully stated herein.

69.     Plaintiff and Defendants entered into a contract whereby Defendants were to pay Plaintiff a set hourly wage for his work and 1.5 times his regular wage for all hours worked in excess of forty per one week period.

70.     In exchange, Plaintiff promised to, and in fact did, work the hours that Defendants dictated.

71.     Over the relevant time period, Plaintiff performed all such work in accordance with the parties' contract.

72.     Defendants breached the agreement by failing to pay Plaintiff for regular hours and for overtime hours worked for Defendants.

73.     Defendants also breached this contract by having Plaintiff falsely imprisoned.

74.     Defendants' breach of the parties' contract is without excuse or justification.

75.     Defendants breach of the parties' contract has caused Plaintiff to suffer damages as set forth herein.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, award him damages consisting of the unpaid regular wages, unpaid overtime wages, consequential damages, and that this Court award Plaintiffs all other and further relief that the Court deems just and proper.

## COUNT IV - FALSE IMPRISONMENT

76.     Plaintiff incorporates all prior paragraphs as if fully stated herein.

77.     Defendants knew they had no lawful basis upon which to have Plaintiff detained by police.

78.     Nonetheless, Defendants caused and encouraged the arrest of Plaintiff by falsely reporting him for credit card fraud and having him arrested.

79.     The restraint of Plaintiff was unlawful and against his will.

80.     Plaintiff was restrained and spent a night in jail because of Defendants actions.

81.     As a result of Defendants' conduct Plaintiff caused Plaintiff to incur actual damages including but not limited to stress, anxiety, embarrassment, and loss of reputation.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, award him actual damages, punitive damages, and that this Court award Plaintiffs all other and further relief that the Court deems just and proper.

## COUNT V - ABUSE OF PROCESS

82.     Plaintiff re-alleges and incorporates by reference all of the above paragraphs.

83.     Defendant made an illegal, improper, and perverted use of process by having Plaintiff falsely arrested.

84.     Defendant had an improper purpose in having Plaintiff arrested, namely, to harass and oppress Plaintiff "for the fun of it" and in mean-spirited fashion.

85.     Defendants could not legally have Plaintiff arrested and knew that Plaintiff was authorized to use the company credit card.

86.     Defendant's abuse of process has caused Plaintiff to suffer actual damages, including but not limited to stress, anxiety, embarrassment, and loss of reputation.

87.     Defendant's actions were wanton, willful, and made in deliberate disregard of Plaintiff's rights.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor, award him actual damages, punitive damages, and that this Court award Plaintiffs all other and further relief that the Court deems just and proper.

Respectfully submitted,

**ROSS & VOYTAS, LLC**

By: /s/ Richard A. Voytas
  Richard A. Voytas, Jr., #52046
  rick@rossvoytas.com
  Nathan K. Bruns, #71812
  bruns@rossvoytas.com
  12444 Powerscourt Drive, Ste 370
  St. Louis, MO 63131
  Phone: (314) 394-0605
  Fax:    (636) 333-1212

  Attorneys for Plaintiff